IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:21-CR-244 |
| ) | |
| ) | |
| JERRY RYALS ) | |
|       Defendant. ) | |
| _____) | |

## DEFENDANT'S POSITION ON SENTENCING

Defendant Jerry Ryals, through counsel, respectfully submits the following Position on Sentencing. Mr. Ryals has received and reviewed the Presentence Investigation Report ("PSR") prepared in this matter. He has no objection to the advisory guidelines calculation.

Despite the seriousness of his crime, there are ample reasons for the Court to impose a probationary sentence in this matter. Based on the factors set forth below, Mr. Ryals respectfully requests that the Court impose a sentence of two years of probation—a sentence that is "sufficient but not greater than necessary" to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## BACKGROUND

As we move further away from the events of January 6, 2021, it becomes more difficult to recall the fervor with which Donald Trump and his acolytes loudly and constantly proclaimed that a United States Presidential election was stolen from the rightful winner. Echoed by conservative media outlets with massive audiences, the false accusations of election tampering became fact in the minds of many of the 74 million Americans who cast their vote for the losing

1

candidate. On January 6, these voters turned out in the thousands to hear the President of the United States—their President—urge them to march on the Capitol building to show their disapproval and encourage their elected officials to reject the results. "We're going to walk down to the Capitol, and we're going to cheer on our brave senators, and congressmen and women," Trump told his supporters shortly before the Capitol assault. "We're probably not going to be cheering so much for some of them because you'll never take back our country with weakness. You have to show strength, and you have to be strong." Trump told them. And they listened.

Jerry Ryals was among the crowd who attended Donald Trump's speech, and joined the crowd in their march on the U.S. Capitol. Mr. Ryals had driven from Oklahoma the previous day with two like-minded friends, eager to hear the President speak. He believed his President, who told him that election was stolen from him. He was given permission by his President to walk down the street to the Capitol and show his discontent. He was surrounded by those who believed as he did, that their cause was righteous.

Yet unlike many others who participated in the January 6th riot, Mr. Ryals had no agenda other than to participate in a peaceful protest. He was unarmed. He did not force his way into the Capitol. He had no physical contact with law enforcement. While certainly, at the time, Mr. Ryals expressed his support for the actions of those at the vanguard of the breech, he did not join them at the front. The spectrum of behavior demonstrated by the January 6 participants is wide, and Mr. Ryals' activities, while unquestionably illegal, fall closer to the reckless rather than malicious end. Based on the foregoing, the § 3553 factors support a probationary sentence, and we request that the Court impose such a sentence.

## DISCUSSION

I.  THE POST-*BOOKER* SENTENCING FRAMEWORK

Under Justice Breyer's majority opinion in *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. *See* 18 U.S.C. § 3553(a)(4)." *United States v. Booker*, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to *Booker*, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in *Booker* – sentencing courts should consider the need for the sentence imposed:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above. Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

> Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the *Booker* majority: No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

3

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of *Booker*, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After *Booker*, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 127 S.Ct. 2456 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Id.* The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.* By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita* at 2465. It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has

been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' *Gall* at 598 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

## II.   A SENTENCE OF PROBATION IS REASONABLE AND APPROPRIATE AND WARRANTED BY THE SECTION 3553 FACTORS.

The statutory penalty for a conviction under 18 U.S.C § 231(a)(3) includes a maximum penalty of five years imprisonment and a $250,000 fine. PSR ¶8. The PSR calculates Mr. Ryals' offense level as 8, with an advisory sentencing range of 0 to 6 months. PSR ¶ 10. This calculation reflects a 2-level reduction for Mr. Ryals' acceptance of responsibility. While the government may argue that Mr. Ryals qualifies for an upward variance based on his post-plea interview with law enforcement, this argument is without merit. Based on the guidelines and the 3553, a sentence of probation is justified.

### A.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

In accordance with 18 U.S.C. 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," when imposing sentence. These factors indicate that a probationary sentence is appropriate for Mr. Ryals.

#### 1.   *Mr. Ryals's History, Background and Character*

Mr. Ryals' history, background, and character could perhaps best be described as, "normal." He is a high school graduate, steadily employed, with a wife and child, who lives in a modest home. He has no previous criminal history. Like many of the men and women who marched on the Capitol on January 6, there is nothing in Mr. Ryals' background that would have

led anyone to believe that he would one day be awaiting felony sentencing in Federal Court.

Mr. Ryals was raised in a devout Christian family and continues to be a man of faith. He is known by friends, family, and former employers as peaceful, hardworking, generous with his time and money, with a "caring and selfless nature." (Exhibit 3). One family friend describes him as a "gentle giant," who "understands responsibility to his family, neighbors, community and country." (Exhibit 1). Those who have observed Mr. Ryals with his three-year-old son, know him to be a "very patient, kind, and loving parent." (Exhibit 2). A former employer believes Mr. Ryals was "held in the highest regard among his peers," and "exemplifies the highest work ethic of a father who cares about his country and his family." (Exhibit 4).

Mr. Ryals has already felt the impact of his involvement in the January 6 incident, which resulted in the loss of employment and estrangement from his wife. He is currently pursuing his electrician's license with a new employer and has been in compliance with his release conditions since his arrest over 18 months ago. He has continued to be a productive member of society, a good son and a good friend.

It is difficult to reconcile Mr. Ryals' participation in the January 6 riot with the positive impact he has had on his family and community, and it is tempting to define him by his worst, rather than his best acts. Indeed, the impact of his crime and his lifelong felon status will largely shape his future. Mr. Ryals is cognizant of this fact and accepts it. Nevertheless, a probationary sentence will allow Mr. Ryals to continue picking up the pieces of his life and move forward as a good citizen and father. Despite his crime, Mr. Ryals is worthy of that opportunity.

   2.   *The Nature and Circumstances of Mr. Ryals' Role in the Offense*

Mr. Ryals has acknowledged guilt and accepted responsibility before this Court. His criminal conduct is concisely described in the statement of facts and in the Presentence

Investigation Report. PSR ¶ 16-31, and Mr. Ryals does not dispute these facts. Mr. Ryals spoke with the FBI on multiple occasions and admitted his wrongdoing in the Capitol breech. He also acknowledges his guilt before this Court.

> B. **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

One of the most puzzling aspects of the January 6 riot is that it brought together mostly ordinary, previously law-abiding citizens, who temporarily lost all reason and good sense. While some of the riot participants were members of various groups who arrived in D.C. with plans to cause criminal mischief, many more, like Mr. Ryals, came to the city with no nefarious intentions. January 6 was a singular event with few precedents by which to guide the Court. As such, the normal calculations of deterrence and community protection do not necessarily apply in the same manner as other criminal sentencings. Nevertheless, the Court is tasked with fashioning a sentence that deters others from engaging in future rioting and protects future potential victims from Mr. Ryals. A sentence of probation accomplishes both goals.

> *1. Deterrence*

Mr. Ryals lost his wife, his job, and is now a convicted felon. Due to the massive publicity and historic nature of the January 6 riot, most people in his community know of his offense, and many have shunned him because of it. Mr. Ryals is a life-long outdoorsman and avid hunter, but will be prohibited from possessing firearms as a result of his conviction. He will also be prohibited from exercising his right to vote—a right he cherished so deeply, it led him to where he is today, before this Court. While a sentence without active jail time may not deter those predisposed to political violence, Mr. Ryals is not in that group, and the distinction is significant. The court has already handed down significant jail time to those who directly engaged in violence against law enforcement officers or who conspired to lead the January 6 mob. But for those, like Mr. Ryals,

who chose to express their political anger through protest, a federal felony conviction is more than adequate to prevent future protesters from crossing the line into illegal activity. For the non-violent, a sentence of probation will represent an adequate deterrence.

*2. Protecting the Public*

Regardless of the sentence imposed by the Court, there is little reason to believe that Mr. Ryals is a future threat to the public. The circumstances that led Mr. Ryals to enter the U.S. Capitol on January 6th were unique to that place and time. Like many others, Mr. Ryals was swept up in the momentum of an angry mob, many of whom believed they were acting patriotically by protesting a corrupted presidential election. While Mr. Ryals, at the time, may have believed he was on the side of God and Country, hindsight has since disabused him of that notion. With the perspective offered by the passage of almost two years, Mr. Ryals recognizes the magnitude of his error and greatly regrets his involvement. Moreover, the price he has already paid for his transgression is too great for him to repeat the mistake. Based on the unlikeliness of Mr. Ryals reoffending, a sentence of probation would be a sufficient sentence that is not "greater than necessary."

c. <u>The Need to Avoid Unwarranted Sentencing Disparities.</u>

In fashioning an appropriate sentence, sentencing courts are to consider "the need to avoid unwarranted sentencing disparities among defendants of similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). There are a limited number of defendants who have been sentenced under 18 USC § 231(a)(3), and there is a fairly wide range of punishment for those who have. Of this group, Mr. Ryals' conduct falls on the less culpable end of the spectrum. The most comparable 231 cases are *United States v. Daryl Johnson*, *21-cr-407* and *United States v. Griswold*, *21-cr-459,* who received sentences of 30 days and 75 days of incarceration,

respectively. Like Mr. Ryals, both defendants had guidelines of 0-6 months. Unlike Mr. Ryals, however, both Johnson and Griswold engaged in conduct that encouraged other rioters and placed officers in danger. Griswold was a member of the mob fighting police at the Rotunda Doors.

Mr. Ryals entered the Capitol building after the original mob and had very little interaction with law enforcement, spending most of his time in one of the unguarded offices that he and others forced their way into. In contrast, Griswold was a member of the mob fighting police at the Rotunda Doors, and who joined a group of rioters who pushed their way past officers attempting to hold their position. Once in the Capitol, Griswold entered the Senate gallery.

Johnson, with his son, entered the Capitol through a broken window. At one point, Johnson rushed a line of law enforcement officers, helped push through the officers, which allowed additional still rioters outside the building to enter. Undoubtedly, Johnson's actions contributed directly to placing those officers in danger.

In light of the fairly minimal sentences incurred by Griswold and Johnson, whose actions actually contributed to the breach and placed officers in danger, a probationary sentence for Mr. Ryals would not represent a sentencing disparity. Mr. Ryals' lack of criminal history, his reputation in the community, and his cooperation with law enforcement, further support a sentence of probation.

## **CONCLUSION**

For the reasons discussed above, a sentence of probation is reasonable and appropriate. Such a sentence sufficiently addresses Mr. Ryals' conduct as well as other factors pursuant to 18 U.S.C. § 3553(a). Based on Mr. Ryals's role in the offense, his life history, and contributions to the lives of his friends and family, a sentence of active incarceration would be greater than necessary. Accordingly, Mr. Ryals respectfully requests that the Court impose a sentence of two

years of probation to be followed by a period of supervised release the Court deems appropriate.

                                  Respectfully Submitted,

                                  SCROFANO LAW PC

BY:

                                  _____/s/_____
                                  Jay P. Mykytiuk [Bar No: 73592]
                                  *Counsel for Jerry Ryals*
                                  406 5th Street NW Suite 100
                                  Washington, DC 20001
                                  jpm@scrofanolaw.com
                                  Ph: 202-630-1522

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September 2022, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system, which system I understand has provided electronic notice counsel of record.

*/s/ Jay P. Mykytiuk*
Jay P. Mykytiuk
